UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHARON MORRISON,

    Plaintiff,

v.                                                            Case No: 8:18-cv-2948-T-30JSS

RELIANCE STANDARD LIFE
INSURANCE COMPANY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Plaintiff's Motion to Remand ("Motion") (Dkt. 3) and Defendant's response in opposition (Dkt. 4). For the reasons that follow, it is recommended that the Motion be denied.

## BACKGROUND

In 2004, Plaintiff, Sharon Morrison, worked as a sales and marketing associate for AIM Insurance Group, Inc. ("AIM"). (Dkt. 1, Ex. 1, Compl. ¶ 6.) AIM provided group long-term disability insurance coverage to its employees, through policy number LTD 110962 ("policy") issued by Defendant, Reliance Standard Life Insurance Company ("Reliance"). (Dkt. 1, Ex. 1, Compl. ¶ 7; Dkt. 1, Ex. 1 at 16.) In exchange for AIM's payment of the insurance premiums, Reliance agreed to provide, subject to the policy's terms and conditions, insurance coverage for AIM's eligible employees. (Dkt. 1, Ex. 1 at 16.) Specifically, the policy provides "income replacement benefits" in the event of total disability from sickness or injury. (Dkt. 1, Ex. 1 at 16.) The policy states that it is "delivered in Florida and is governed by its laws." (Dkt. 1, Ex. 1 at 16.)

In 2005, Ms. Morrison sustained a disabling injury to her lower back. (Dkt. 1, Ex. 1, Compl. ¶ 9.) On August 31, 2006, Ms. Morrison began receiving $2,788.50 per month in disability

payments under the policy. (Dkt. 1, Ex. 1, Compl. ¶ 9.) On October 23, 2006, Reliance informed Ms. Morrison that, pursuant to the terms of the policy, Reliance was required to estimate the amount of Social Security Disability Insurance payments Ms. Morrison would be eligible for and reduce her payments under the policy accordingly. (Dkt. 1, Ex. 1, Compl. ¶ 10.) Ms. Morrison alleges, however, that Reliance continued to pay the full amount of benefits until May of 2009, at which point Reliance began off-setting her benefits by $1,481.00 for "Approved Primary Social Security" benefits. (Dkt. 1, Ex. 1, Compl. ¶ 11.) Ms. Morrison alleges that Reliance continued with this off-set for the next seven and a half years. (Dkt. 1, Ex. 1, Compl. ¶ 11.)

Then, on October 13, 2016, Reliance informed Ms. Morrison that her benefits under the policy had been overpaid by and, without a lump sum payment of $109,142.44, Reliance would recoup the overpayment by ceasing future payments. (Dkt. 1, Ex. 1, Compl. ¶ 12.) As a result, Ms. Morrison alleges that Reliance has withheld benefits under the policy since October of 2016. (Dkt. 1, Ex. 1, Compl. ¶ 13.) On November 8, 2018, seeking to enforce her rights under the policy, Ms. Morrison sued Reliance in the Thirteenth Judicial Circuit of Florida, requesting declaratory (Count I) and injunctive relief (Count II), and alleging breach of contract (Count III). (Dkt. 1, Ex. 1, Compl.)

On December 5, 2018, Reliance removed the action to federal court. (Dkt. 1.) Arguing that the plan is covered by the Employee Retirement Income Security Act of 1974 ("ERISA"), Reliance alleges that removal is proper based on federal question jurisdiction under 28 U.S.C. § 1331. (Dkt. 1 at 1–2.) In moving to remand, Ms. Morrison argues that federal jurisdiction is lacking because the plan is governed by Florida law. (Dkt. 3 at 1.)

**APPLICABLE STANDARDS**

A civil action brought in state court can be removed to a federal district court if the case could have been brought there originally. 28 U.S.C. § 1441(a). Federal question jurisdiction exists when the lawsuit arises "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "A removing defendant bears the burden of proving proper federal jurisdiction," *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002), and "[a]ny doubts about the propriety of federal jurisdiction should be resolved in favor of remand to state court," *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1294 (11th Cir. 2008). Generally, the Court applies the "well-pleaded complaint rule," which states "that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). "One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Id.* at 63–64.

Although "it is quite clear that the burden of establishing removal jurisdiction rests squarely on the shoulders of the removing party," that burden must not be construed "too heavily" as to undermine exclusively federal remedies, such as those available under ERISA. *Edwards v. Prudential Ins. Co. of America*, 213 F. Supp. 2d 1376, 1380 n.6 (S.D. Fla. 2002). Thus, to determine whether a plaintiff's claims fall within the remedies under ERISA, the Court examines the Complaint, the statutes upon which the claims are based, and the "various plan documents." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 211 (2004).

**ANALYSIS**

The parties do not dispute that ERISA is one area in which Congress has exercised its power of complete pre-emption. *See Davila*, 542 U.S. at 209 ("Thus, the ERISA civil enforcement

mechanism is one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'") (quoting *Taylor*, 481 U.S. at 65–66).  Based on this pre-emption, "causes of action within the scope of the civil enforcement provisions of § 502(a)" of ERISA are "removable to federal court." *Taylor*, 481 U.S. at 66.  Therefore, the inquiry for this Court is: "(1) whether the plaintiff could have brought its claim under § 502(a); and (2) whether no other legal duty supports the plaintiff's claim." *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1345 (11th Cir. 2009) (citing *Davila*, 542 U.S. at 210).  Because Ms. Morrison does not allege that any other legal duty supports her claims, the only issue here is whether she could have brought her claims under § 502(a).

Section 502(a) of ERISA, codified at 29 U.S.C. § 1132, allows "a participant or beneficiary" to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  If this action is "a suit by a beneficiary to recover benefits from a covered plan, it falls directly under § 502(a)(1)(B) of ERISA, which provides an exclusive federal cause of action for resolution of such disputes." *Taylor*, 481 U.S. at 62–63.  Ms. Morrison's Complaint does seek to recover benefits from, and enforce her rights under, the group disability insurance plan at issue.  (Dkt. 1, Ex. 1, Compl. ¶¶ 7, 17–19, 32–33, 39–40.)  However, Ms. Morrison argues that Reliance has failed to establish that the disability insurance plan is an ERISA-covered plan.  (Dkt. 3 at 3–4.)

### A.  Choice-of-Law Provision

Initially, Ms. Morrison argues that ERISA does not apply because a choice-of-law provision in the policy elects Florida law.  (Dkt. 3 at 2–3.)  Specifically, the policy states that it is

"delivered in Florida and is governed by its laws." (Dkt. 1, Ex. 1 at 16.) However, courts have rejected attempts to apply choice-of-law provisions in a way that would undermine ERISA's broad scope. For example, in *Prudential Insurance Co. of America v. Doe*, the Eighth Circuit rejected an attempt to apply Illinois common law to an ERISA-covered plan based on the plan's choice-of-law provision. 140 F.3d 785, 790–91 (8th Cir. 1998). The court reasoned that the choice-of-law provision "in the contract does not alter the outcome here, for parties may not contract to choose state law as the governing law of an ERISA-governed benefit plan." *Id.* Similarly, in *Tompkins v. United Healthcare of New England, Inc.*, the First Circuit rejected an argument that a plan contract could waive application of ERISA, finding "no case holding that parties may contractually waive the right to assert ERISA preemption." 203 F.3d 90, 97 (1st Cir. 2000).

Choice-of-law provisions may be relevant to the extent that they define the extent of an insurer's liability. *See Buce v. Allianz Life Ins. Co.*, 247 F.3d 1133, 1148 (11th Cir. 2001). Private contracting parties are free to use a choice of law provision that acts as "a convenient shorthand for what the private contracting parties wish to agree to." *Id.* However, the parties may not do so in a way "that would undercut the uniform implementation of ERISA's text or its attendant case law." *Id.* (citing *Egelhoff v. Egelhoff*, 532 U.S. 141 (2001)). Accordingly, choice-of-law provisions may not be used to foreclose application of ERISA. *See Seamon v. Vaughan*, 921 F.2d 1217, 1219 (11th Cir. 1991) ("The parties may not contradict federal law by private agreement. Thus, ERISA governs this case despite any provision of the Administrator Agreement to the contrary."). Instead, if a plan "satisfies the statutory definition of an employee welfare benefit plan, then ERISA applies regardless of the intent of the plan administrators and fiduciaries." *Anderson v. UNUM Provident Corp.*, 369 F.3d 1257, 1264 (11th Cir. 2004). Therefore, ERISA

pre-emption will apply in this case if the policy at issue meets the statutory definition of an employee welfare benefit plan, regardless of any choice-of-law provisions.

### B. Employee Welfare Benefit Plan

Ms. Morrison also contends that Reliance has not shown that its policy is an "employee welfare benefit plan" under ERISA. (Dkt. 3 at 3–4.) The starting point for this question "is 'the language of the statute itself.'" *Anderson*, 369 F.3d at 1264 (quoting *Consol. Bank, N.A., Hialeah, Fla. v. U.S. Dep't of Treasury*, 118 F.3d 1461, 1463 (11th Cir. 1997)). ERISA defines an "employee welfare benefit plan" as

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) . . . benefits in the event of . . . disability . . . .

29 U.S.C. § 1002(1). In analyzing whether ERISA applies, courts often begin "by examining whether the plan falls into the regulatory safe harbor, which excludes from ERISA's jurisdictional ambit certain group or group-type insurance programs offered by an insurer to employees or members of an employee organization." *Anderson*, 369 F.3d at 1263 n.2.

Under the safe harbor rules, a plan is excluded from ERISA if

> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3–1(j).  As Reliance argues (Dkt. 4 at 6–7), the plan documents confirm (Dkt. 1, Ex. 1 at 22–23), and Ms. Morrison does not dispute (Dkt. 3 at 4), the employer paid 100% of the insurance premiums and participation in the program was involuntary for full-time employees.  Therefore, the safe harbor rules do not exclude the plan from ERISA.

Nonetheless, the Court must still ensure that the plan falls within the statutory definition of an "employee welfare benefit plan" as set forth above.  *See Anderson*, 369 F.3d at 1263 n.2 (explaining that "a plan that falls outside of the safe harbor exception does not necessarily fall within the jurisdiction of ERISA").  The Eleventh Circuit has set forth the necessary elements as follows: "(1) a 'plan, fund, or program' (2) established or maintained (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing [disability] benefits (5) to participants or their beneficiaries."  *Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982) (en banc).  As noted in *Donovan*, elements (3), (4), and (5) are "either self-explanatory or defined by statute," *id.*, and are easily satisfied here.  Ms. Morrison's employer, AIM, agrees to pay "all premiums required" under the policy (Dkt. 1, Ex. 1 at 26) for the purpose of providing "income replacement benefits" for total disability (Dkt. 1, Ex. 1 at 16) to its employees (Dkt. 1, Ex. 1 at 31).

Often the subject of more careful analysis is whether a "plan, fund, or program" is "established or maintained" by the employer.  *See Donovan*, 688 F.2d at 1372–73.  The Eleventh Circuit has "adopted a 'flexible analysis' for determining whether an ERISA 'plan' is established." *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1330 (11th Cir. 1998) (quoting *Williams v. Wright*, 927 F.2d 1540, 1543 (11th Cir. 1991)).  A plan "is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Donovan*, 688 F.2d at 1373.  Although

the "purchase of insurance does not conclusively establish a plan, fund, or program," the "purchase of a group policy or multiple policies covering a class of employees offers substantial evidence that a plan, fund, or program has been established." *Id.*

In this case, the Court can readily conclude that Ms. Morrison's employer, AIM, established a plan. AIM purchased a group long-term disability insurance policy (Dkt. 1, Ex. 1 at 16) to cover, as a "general group," its employees. (Dkt. 1, Ex. 1 at 31.) The plan documents allow a reasonable person to ascertain the intended benefits, which are "60% of Covered Monthly Earnings" (Dkt. 1, Ex. 1 at 22, 24); a class of beneficiaries, which is full-time employees that satisfy the waiting period (Dkt. 1, Ex. 1 at 22); the source of financing, which is the employer's payment of the insurance premiums (Dkt. 1, Ex. 1 at 23, 26); and the procedures for receiving benefits, which are defined by the claims provisions (Dkt. 1, Ex. 1 at 29–30). Indeed, that Ms. Morrison did, in fact, ascertain the method of applying for, and receiving, benefits shows an ascertainable and established plan. *See Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1214 (11th Cir. 1999) ("A plan is 'established' when there has been some degree of implementation by the employer going beyond a mere intent to confer a benefit.").

Therefore, because Ms. Morrison's suit is an action to recover benefits from an employee welfare benefit plan, Ms. Morrison's suit is completely pre-empted by ERISA and removal was proper. *See Taylor*, 481 U.S. at 62–63.

Accordingly, it is **RECOMMENDED** that Plaintiff's Motion to Remand (Dkt. 3) be **DENIED**.

**IT IS SO REPORTED** in Tampa, Florida, on April 9, 2019.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:
The Honorable James S. Moody, Jr.
Counsel of Record